**SANYO ELECTRIC, INC., Plaintiff,**

**v.**

**M/V HANJIN INCHEON and Hanjin Container Lines, Ltd., a foreign corporation, Defendants.**

**No. C–81–1074.**

United States District Court, W.D. Washington.

Oct. 5, 1983.

Gary House, Seattle, Wash., for plaintiff.

Theodore A. LeGros, Seattle, Wash., for defendants.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

CONTI, District Judge, Sitting by Designation.

This matter having come on for trial on the 26th day of September, 1983, plaintiff being represented by Gary W. House of Detels, Madden, Crockett & McGee, and defendant being represented by Theodore A. LeGros of LeGros, Buchanan, Paul & Whitehead, and the court having heard the testimony of the witnesses, and having received the documentary evidence, and having considered the same, the court hereby issues the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## INTRODUCTION

This case involves a cargo claim for damages to stereophonic receivers. Plaintiff shipped the receivers from its main manufacturing facility in Keelung, Taiwan to various points of delivery in the United States. Defendant was the carrier of the cargo. The cargo was shipped under through bills of lading characterized as "Intermodal Bills of Lading." Said carriage was subject to the terms and conditions of the bills of lading and of the United States Carriage of Goods by Sea Act, Title 46 U.S.C. § 1300 et seq. ("COGSA").

Upon receipt of the cargo in the United States numerous stereo units were damaged by water, condensation, sweat, or humidity. Said units were in good condition when plaintiff delivered the cargo to defendant. As such, plaintiff has established a prima facie case of liability against defendant for the damaged units. Defendant has not rebutted this presumption. Accordingly, the court finds in favor of plaintiff and against defendant in the sum of $306,021.46, plus prejudgment interest from August 6, 1980, at the statutory rate. *See* 28 U.S.C. § 1961.

## FINDINGS OF FACT

1. Plaintiff is and at all times material hereto was a foreign corporation organized and existing under the laws of Japan, and the owner of certain stereophonic receivers forming the subject matter of this action.

2. Defendant is and at all times material was a foreign corporation organized and existing under the laws of the Republic of South Korea, and the owner and operator of the M/V Hanjin Incheon.

3. All of the stereophonic receivers pertaining to this action were shipped from Keelung, Taiwan to the ports of Seattle, Washington and Long Beach, California. The units were thereafter carried by rail to plaintiff's warehouse facilities at Little Ferry, New Jersey; Compton, California; Elk Grove Village, Illinois; and Schiller Park, Illinois.

3A. The cargo was transported in containers provided by defendant. All of the units were placed in the containers at plaintiff's facility in Keelung, Taiwan. Said containers were stuffed with approximately 1,000 units each.

4. The cargo was transported on two successive voyages:

(a) On or about May 19, 1980, 5,000 stereo receivers were transported by defendant from Keelung, Taiwan to Seattle, Washington. All of the units were discharged at Seattle and thereafter shipped by rail to plaintiff's warehouse at Little Ferry, New Jersey. The units were transported throughout the voyage in five containers owned and operated by defendant. The containers were the following: UFCU 20663, 201255, 208533, 207175, and 205257. The bills of lading were the following: KEE 10069, KEE 10070, and KEE 10071. Said voyage is referred to as voyage 10E.

(b) On or about June 9, 1980, 12,000 stereo receivers were transported by defendant from Keelung, Taiwan to Seattle, Washington and Long Beach, California. The units were transported throughout the voyage in seven containers owned and operated by defendant. Two of the containers were discharged at Seattle, and thereafter carried by rail to Plaintiff's warehouse at Little Ferry, New Jersey. The remainder of the containers were discharged at Long Beach. One container remained in California at plaintiff's warehouse at Compton; the remaining four containers were transhipped by rail to plaintiff's facilities at Elk Grove Village, Illinois, and Schiller Park, Illinois. The containers were the following: UFCU 215238, 229528, 700737, 221562, 700220, 209747, and 700463. The bills of lading were the following: KEE 10093, KEE 10111, KEE 10096, KEE 10095, KEE 10097, KEE 10122, KEE 10121, and KEE 10094. Said voyage is referred to as voyage 11E.

5. Upon arrival in Little Ferry, New Jersey, 2,314 stereo units were found to be water damaged. Of that total, defendant has admitted liability for the water damage to 137 units.

6. Four of the containers used in voyage 10E were defective. Specifically, UFCU 205257 contained a patched hole; UFCU 207175 contained pinpoint punctures; UFCU 208533 contained two holes; and UFCU 206663 revealed tidemarks, a damp floor and cartons stuck to the bottom of the floor. *See* deposition of E.H. Rebel; deposition of James Morris.

7. After the stereo units were found to be damaged in voyage 10E, plaintiff contacted the various warehouses containing units from voyage 11E. The entire shipment from voyage was subjected to a 100% inspection at plaintiff's warehouse at Elk Grove, Illinois. *See* plaintiff's Exhibit No. 36–G.

8. A review of the stereo units transported on voyage 11E revealed water damage to 1,778 units. The damage was similar to the water damage found on the units contained on voyage 10E. *See* plaintiff's Exhibit Nos. 36–G, 41.

9. The water damaged stereo units resulted in damages of $306,021.46.

10. All of the stereo units were properly packed, cartoned and stowed by plaintiff, and were in good condition when delivered to defendant.

11. Voyage 10E and 11E were the only two times in which plaintiff utilized the services of defendant. Further, although plaintiff shipped only 12,000 stereo units by defendant, it had produced approximately 47,500 stereo units, of which contained the 12,000 units carried by defendant. All of the other units manufactured by plaintiff at the same time in which the 12,000 units were produced were shipped via other carriers. None of the other shipments experienced rust on the units due to water damage, thereby discrediting defendant's argument that the damage caused to plaintiff's units on voyage 10E and 11E were the result of inherent defects in the stereo receiver itself.

12. Damages caused to the units on voyage 10E and 11E were the result of water entering defendant's containers, thereby resulting in either direct water damage or by humid or sweat conditions in the containers. Further, said damages occurred at some point in transit after delivery of the cargo to defendant and before out-turn at the various points of delivery.

13. Plaintiff's actions in notifying defendant, arranging for inspection of the goods, segregating the wet cartons from the dry cartons, and mitigating damages were reasonable and proper under the circumstances.

14. Plaintiff's warehouse facilities at Keelung, Taiwan; Little Ferry, New Jersey; Elk Grove, Illinois; Schiller Park, Illinois; and Compton, California, were modern, environmentally controlled facilities.

## CONCLUSIONS OF LAW

1. The court has admiralty jurisdiction of this action by virtue of 28 U.S.C. § 1331 and 46 U.S.C. § 1300 *et seq.* Venue is properly laid in this district. 28 U.S.C. § 1391.

2. Plaintiff has the burden to establish a prima facie case of liability against the carrier that the cargo was damaged in transit. *See United States v. Lykes Brothers Steamship Company, Inc.,* 511 F.2d 218, 223 (5th Cir.1975). Plaintiff herein has established a prima facie case of liability against defendant. The stereo units were received by defendant in good condition, the defendant issued bills of lading which contained no exceptions on their face, and the goods arrived damaged at their respective points of destination. 46 U.S.C. § 1303(4); *E.T. Barwick Mills, Inc. v. Hellenic Lines, Ltd.,* 331 F.Supp. 161, 164 (S.D.Ga.1971), affirmed, 472 F.2d 1406 (5th Cir.1973).

3. Having established a prima facie case that the cargo was damaged in transit, the burden shifts to the carrier to rebut the presumption. *Blasser Brothers, Inc. v. Northern Pan American Line, et al.,* 1982 AMC 84 (5th Cir.1982). This is a heavy burden. 46 U.S.C. § 1303(1) and (2). Defendant has an absolute, non-delegable duty of providing seaworthy equipment for the carriage of goods. 46 U.S.C. § 1303(1).

4. Defendant has failed to rebut plaintiff's prima facie case. Defendant alleges that all of the damaged units on voyage 10E and 11E, except for the 137 units in which defendant admits liability, were caused by inherent defects in the stereo units themselves. However, the weight of the evidence is contrary. Of the 47,500 stereo units produced by plaintiff at the time the 12,000 units were produced, only the receivers carried by defendant experienced rust damages due to water, sweat or humidity. Further, it was admitted by defendant that the units received for shipment on voyage 10E and 11E were packaged properly and according to industry standards.

5. Having failed to rebut plaintiff's prima facie case of liability, defendant is liable for the damages suffered by plaintiff for the damaged cargo. *Swedish American Lines v. Evans Products Company*, 431 F.2d 869, 870 (4th Cir.1970). Said damages amount to $306,021.46. Plaintiff is also entitled to prejudgment interest from August 9, 1980, the date in which plaintiff stipulated to as the date in which all of the stereo units were received, to the present. *See Dillingham Shipyard v. Associated Insulation Co., Ltd.*, 649 F.2d 1322, 1328 (9th Cir.1981). Said prejudgment interest shall be computed at the same rate as authorized in 28 U.S.C. § 1961. Local Admiralty Rule 155.

## CONCLUSION

█ For the reasons set forth above, the court hereby concludes that plaintiff has established a prima facie case that its stereo units were damaged while in transit. Defendant, as the carrier of those goods, has failed to rebut this presumption. Accordingly, plaintiff is entitled to recover damages for the stereo units in the amount of $306,021.46, plus prejudgment interest from August 9, 1980. Said prejudgment interest shall be computed as specified in 28 U.S.C. § 1961.